# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | CASE NO. 11-11424-cag |
| FSI-TEXVAL, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## MOTION TO LIFT STAY UPON UNIMPROVED LAND

TO THE HONORABLE CRAIG GARGOTTA, UNITED STATES BANKRUPTCY JUDGE:

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

NOW COMES Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A. ("Wells Fargo"), and files this its Motion to Lift Stay Upon Unimproved Land under 11 U.S.C. § 362(d)(1), (d)(2), & (d)(3). Wells Fargo shows as follows:

## I.
## Jurisdiction

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) & (G).

## II.
## Background Facts

### A.    Debtor's Pro Se Filing and the Trustee's Motion to Dismiss

2.    FSI-TexVal, LLC ("Debtor"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 6, 2011 (the "Petition Date"). Debtor filed on a pro se basis.

1

3.     The U.S. Trustee immediately filed a Motion to Dismiss this case, based on the fact that Debtor, which is a corporate entity, was required to be represented by counsel. Wells Fargo filed a response in support of the Motion to Dismiss, arguing that Debtor's case should also be dismissed for cause as a bad faith filing under the standards enunciated by *In re Matter of Little Creek Development Company*, 779 F.2d 1068 (5th Cir. 1986).

4.     On the day of the July 11, 2011 hearing on the Motion to Dismiss, Debtor filed an application to employ counsel. At the hearing, Wells Fargo presented evidence of the following facts supporting dismissal under *Little Creek*:

- Debtor is the owner of single asset real estate, which is an unimproved piece of property generating little to no income.

- Wells Fargo is the principal creditor, with a secured claim of more than $447,000.00, including accrued interest and other charges as of the date of the bankruptcy petition. The other creditor is a "Tax Solutions" entity which loaned money to the Debtor to pay its property taxes – an action prohibited by the loan agreements between Debtor and Wells Fargo. But for the "Tax Solutions" creditor, this is a two-party dispute.

- Wells Fargo had properly filed and noticed a non-judicial foreclosure to occur on the first Tuesday in June 2011. The sole purpose of the bankruptcy filing was to stop that foreclosure.

- Debtor's representative had full knowledge that filing for Chapter 11 bankruptcy required an attorney, as such representative had been involved in numerous other Chapter 11 proceedings involving related corporate entities, each of which were represented by counsel.

- Debtor failed to timely file the schedules required by 11 U.S.C. § 521, failed to request an extension to file same, and failed attend a timely noticed 2004 examination.

5.     It is undisputed by the parties hereto – and as was determined by this Court at the July 11 hearing on the Motion to Dismiss – that Debtor is a single asset real estate entity, as that term is defined by 11 U.S.C. § 101 (51B). As such, Debtor is subject to the requirements of 11

U.S.C. § 362(d)(3), and must either file a reorganization plan with a reasonable possibility of being confirmed or begin adequate protection payments to Wells Fargo not later than the 90th day after the Petition Date.

6.      At the hearing on the Motion to Dismiss, Debtor's representative, Mr. Amer Hammoud, testified as to the reasons why the case should not be dismissed, including allegations that: (1) Debtor had equity in the property based on an appraisal of at least $500,000.00; and (2) Debtor had a reorganization plan in the works to develop the property as a quick-lube service station, attract investors for same, and pay off Wells Fargo in a "timely" fashion.

7.      Despite the *Little Creek* evidence presented, this Court acknowledged the protections provided by the Bankruptcy Code to single asset real estate debtors, and consequently the Court did not immediately grant the pending Motion to Dismiss on the grounds urged by either the U.S. Trustee or Wells Fargo. However, with the expectation that the passage of 90 days would show the Debtor's intentions on proceeding in this case, the Court re-set the hearing on the Motion to Dismiss for September 12, 2011 – the 98th day after the Petition Date.

**B.    Events Occurring After the Hearing on the Motion to Dismiss**

8.      As was required by the Court's Order Re-Setting the Motion to Dismiss, Debtor filed its schedules on July 25, 2011. Those schedules show what was already known about this single asset real estate case: (1) Debtor's ownership of one piece of real property; (2) Wells Fargo's secured claim of $408,000.00 (the amount scheduled by Debtor); (3) a claim by Property Tax Solutions for $45,023.00; and (4) no monthly income generated.

9.      Wells Fargo conducted a 2004 examination of Debtor on August 2, 2011 in an effort to further explore the evidence supporting dismissal under *Little Creek*. That examination confirmed the evidence presented at the July 11 Motion to Dismiss hearing, but also shed light

on Debtor's business practices, its reasons for filing bankruptcy, and its plans for moving forward. Highlights from such examination, which will be presented at the hearing on this matter, include the following:

- Debtor's representative agreed again that the Property was single asset real estate.

- Debtor scheduled the Property with a value of $517,500.00. Such value is based upon Williamson County's 2010 tax assessment. Debtor does not have an independently-obtained appraisal for the Property, other than Williamson County's assessment.

- Williamson's County's 2011 tax assessment has the Property listed with a value of $507,150.00.

- Debtor's Property is unimproved real estate, but it does in fact support a telecommunications tower owned by AT&T. AT&T leases the space for the tower from Tex-Val, L.P., the predecessor-in-interest to Debtor, at the rate of approximately $690.00 per month. According to the Texas Secretary of State, Tex-Val, L.P. forfeited its existence on August 28, 2009.

- Debtor's schedules do not list any lease or other executory contract between it and AT&T, or report income from the Property of any kind.

- Debtor does not have the Property specifically insured, but believes it may be covered by an umbrella policy. Subsequently, Debtor has not produced any general liability policy which covers the Property.

- Debtor's original loan obligation to Wells Fargo, in the amount of $408,000.00, matured on November 1, 2010. Debtor has not paid any amount of money to Wells Fargo on its loan obligations since August of 2010.

- Debtor had not paid its real property taxes for the years 2009 or 2010. When Debtor approached Wells Fargo for a loan extension, Wells Fargo's consideration of same was contingent upon Debtor's payment of real property taxes owing for the years 2009 and 2010.

- Debtor knew that paying its property taxes through a "Tax Solutions" entity was prohibited by the loan documents, and was not otherwise agreed to by Wells Fargo, but Debtor did so anyway. Such transaction created a claim for "Tax Solutions" in the amount of $45,023.00 which primes Wells Fargo's lien for such amount. Debtor then tried to hide such fact from Wells Fargo in order to continue negotiating a loan extension. Then, Debtor made payments on the real property

4

tax note to "Tax Solutions," even though it was no longer making payments to Wells Fargo.

- Debtor's plan to develop the Property as a quick-lube service station was last reviewed by the City of Round Rock more than three years ago, in August 2008. There have been no communications with Round Rock regarding such plans since that time.

- There are no written proposals, letters of intent, or contracts regarding Debtor's plan to attract investors to fund development of the Property as a quick-lube service station.

- Debtor testified that he filed for bankruptcy at the 11th hour, and that he did so "knowing that you have to get an attorney involved, but it's a mean [sic] to allow me the time to get an attorney involved. If they only charge me $100, I'll hire them tomorrow to do it, but you have to come up with money."

- Debtor testified that even though he filled out the documents swearing that he had taken credit counseling before filing for bankruptcy, he in fact had not done so. His testimony was that he "probably panickly [sic] filled them out" because "I was just trying to file so I could get an attorney involved."

## C.    Debtor's Loan Documents with Wells Fargo and Default

10.    As shown in the attached affidavit of Jeff Austin, Vice President with Wells Fargo, the facts concerning Debtor's loans with Wells Fargo and the Property are as follows.

11.    Debtor owns an unimproved lot of land – 735 Louis Henna Blvd., in Round Rock, Williamson County, Texas (as described herein, the "Property").

12.    On January 8, 2008, Tex-Val, L.P., which is the predecessor-in-interest to Debtor, executed a promissory note payable to Wachovia Bank, N.A., which is the predecessor-in-interest to Wells Fargo, in the amount of $408,000, a true and correct copy of which is attached hereto as Exhibit "A" and which is incorporated by reference. ("the Note"). The Note was interest only for one year, with all principal and interest due and payable on February 8, 2009.

13.    The Note was secured by a deed of trust and assignment of rents against the Property. A true and correct copy such deed of trust is attached hereto as Exhibit "B" and is

incorporated by reference. ("the Deed of Trust"). The Deed of Trust was duly perfected and recorded at Document number 2008002892 in the Official Public Records of Williamson County, Texas. Pursuant to Debtor's Schedules, the only other secured creditor with a claim against the Property is Property Tax Solutions, LLC with a claim for $45,023.00.

14. On February 17, 2009, Tex-Val, L.P. and Wachovia Bank executed Modification Number One to the Note, (the "Extension"), which was payable on an interest-only basis for six months, with all interest and principal being due and payable on August 7, 2009. A true and correct copy of the Extension is attached hereto as Exhibit "C" and is incorporated by reference.

15. On June 20, 2010, Debtor FSI-TexVal, L.L.C. purchased the Property from its predecessor in interest, Tex-Val, L.P., promising to pay all indebtedness under the Note and Extension originally owing to Wachovia Bank (the "Warranty Deed (Assumption)"). A true and correct copy of the Warranty Deed (Assumption) is attached hereto as Exhibit "D" and is incorporated by reference.

16. On June 30, 2010, Debtor, its predecessor in interest Tex-Val, L.P., Wachovia Bank, and Wells Fargo, the successor-by-merger to Wachovia Bank, entered into a Modification, Extension and Assumption Agreement, (the "Assumption Agreement"), whereby Debtor agreed to repay to Wells Fargo all indebtedness under the Note and Extension originally owing to Wachovia Bank, which was still secured the Deed of Trust against the Property. Pursuant to the terms of the Assumption Agreement, all principal and interest under the Note and Extension became due and payable on November 1, 2010. A true and correct copy of the Assumption Agreement is attached hereto as Exhibit "E" and is incorporated by reference.

17. Debtor did not pay to Wells Fargo any of the principal or interest owing under the Note or the Extension on its maturity date of November 1, 2010. Wells Fargo made demand

upon Debtor and instituted foreclosure proceedings on the Property in May 2011, noticing the foreclosure sale to occur on June 7, 2011. On June 6, 2011, Debtor filed this case, thereby staying the foreclosure of the Property upon which Wells Fargo has a secured lien.

18.     As of the Petition Date, Debtor owed to Wells Fargo a total of $447,310.21 under the Note and its Extension, representing unpaid principal, interest, late charges, and costs incident to collection on the indebtedness. A breakdown of such amounts is as follows:

Principal: $407,458.25
Interest: $28,329.17
Late Charges: $152.79
Appraisal: $1,000
Environmental Phase One: $1,875
Environmental Phase Two: $8,495

19.     The only other secured claim against the Property is the claim of Property Tax Solutions in the amount of $45,023.00. Claims against the Property total $492,333.21.

20.     Wells Fargo had an appraisal performed on the Property dated March 30, 2011. The Property's value, according to Wells Fargo's appraisal, is only $315,000.00.

### III.
### Argument & Authorities for Motion to Lift Stay

21.     Wells Fargo moves to lift the stay under 11 U.S.C. §362(d)(1), (d)(2) & (d)(3).

**A.     Cause**

22.     Lifting the stay for cause under 11 U.S.C. §362(d)(1) is appropriate in light of the evidence of a bad faith filing presented at the July 11 hearing on the U.S. Trustee's Motion to Dismiss, and the evidence obtained since that time. *Little Creek* detailed the standards the Fifth Circuit thought exemplified a bad faith filing:

Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith

in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

*Little Creek*, 779 F.2d at 1072-73. As shown, Debtor FSI-TexVal, LLC might as well be named Little Creek, and the facts of this case are so egregious that dismissal is warranted. As the Fifth Circuit noted: "Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.* Debtor's testimony that he filed at the 11th hour, just as a "mean [sic] to allow me the time to get an attorney involved," shows that Debtor is treating this process as a game.

23.      As is clear from the schedules, this is a two party dispute. A two party dispute is evidence of a bad faith filing. No good faith efforts have been made to reorganize. If the Debtor had sought a temporary restraining order in state court, Wells Fargo would have at least received interest and attorneys' fees for the duration of the injunction. In the case at bar, the Debtor received a free four month injunction for the cost of $1,000.

24.     Debtor's business practices before and during this bankruptcy proceeding, including its misrepresentations to Wells Fargo regarding its transactions with "Tax Solutions," and its failure to maintain insurance, are also indices of bad faith supporting relief from the stay under 11 U.S.C. § 362(d)(1).

**B.     No Equity and No Chance of Reorganization**

25.     There is no equity in the Property and no reorganization possible.  The Property is raw, undeveloped land.  There is no business to reorganize.  There are no employees.  The stay should be lifted under 11 U.S.C. §362(d)(2) to allow Wells Fargo to foreclose.

**C.     No Confirmable Plan and No Adequate Protection Payments**

26.     This case was filed June 6, 2010.  Ninety (90) days from the Petition Date was September 4, 2011 which fell on a Sunday.  September 5, 2011 was Labor Day, so Debtor had, therefore, until Tuesday, September 6, 2011 to either file a plan of reorganization that had a reasonable possibility of being confirmed in a reasonable time or to commence monthly payments at the contract rate of interest to Wells Fargo.  Neither of these events have occurred.  Accordingly, under the provisions of 11 U.S.C. §362(d)(3), this Court should grant relief from the stay.  Wells Fargo believes the appropriate relief to grant is to terminate the stay because the Property is raw, undeveloped land and there is no business which generates income from which its creditors can be paid through a reorganization plan.

**IV.**
**Bankruptcy Court's Retention of Jurisdiction**

27.     Wells Fargo further requests that, after lifting the Automatic Stay with respect to the Property, the Court retain the exclusive jurisdiction of the Property granted it pursuant to 28

U.S.C. §1334(e)(1) to hear any request for injunctive relief regarding Wells Fargo's foreclosure that may be filed by any party.

## V.
## Conclusion & Prayer

WHEREFORE PREMISES CONSIDERED, Wells Fargo prays for the following relief:

a.      That the Court hold a hearing on this its Motion for Relief from the Stay;

b.      That the Court terminate the Automatic Stay pursuant to 11 U.S.C. §362(d)(1), (d)(2) or (d)(3) to allow Wells Fargo to exercise its rights under the loan documents and applicable law to foreclose its liens on the Property;

c.      That the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived to enable Wells Fargo to immediately enforce and implement the terms of any order granting relief from the Automatic Stay;

d.      That the Court retain Exclusive Jurisdiction over the Property to hear any requests for injunctive relief until Wells Fargo foreclosure is completed; and,

e.      For all such other and further relief, in law or in equity, to which Wells Fargo may show itself justly entitled.

Respectfully submitted,

Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue
Suite 2200
Austin, TX 78701
Telephone: (512) 480-5620
Facsimile: (512) 480-5820

By: /s/ Christopher H. Trickey
      Frank R. Monroe
      State Bar No. 14271000
      James V. Hoeffner
      State Bar No. 09772700
      Christopher H. Trickey
      State Bar No. 24014720

**Counsel for Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A.**

## CERTIFICATE OF SERVICE

     I hereby certify that on the 7th day of September, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to CM/ECF participants or I will mail by the United States Postal Service by first class mail to non-CM/ECF participants:

FSI-TexVal, LLC
c/o Amer Hammoud
600 Round Rock West Drive Suite 404
Round Rock, Texas 78681

Mark Taylor
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, 18th Floor
Austin, Texas 78701

Valerie L. Wenger
U.S. Trustee
903 San Jacinto Blvd., Rm. 230
Austin, TX 78701

                             /s/ Christopher H. Trickey
                             Christopher H. Trickey

# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | CASE NO. 11-11424-cag |
| FSI-TEXVAL, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## <u>SUPPORTING AFFIDAVIT OF JEFF AUSTIN</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned authority, on this 7th day of September, 2011, personally appeared Geoffrey ("Jeff") Austin, a person known to me, who first being duly sworn deposed and stated as follows:

1.      "My name is Jeff Austin. I am over twenty-one (21) years of age and I am fully competent to execute this affidavit. I have never been convicted of any felony or crime of moral turpitude. I have personal knowledge of all statements herein and the same are true and correct.

2.      "I am a Vice President in the Credit Management Group for Wells Fargo Bank, N.A., successor-by-merger with Wachovia Bank, N.A. (herein, "Wells Fargo"). I have held this position since May 4, 2010. I have been the account manager on the account detailed below since January 18, 2011. I am the individual who maintained the business records of Wells Fargo pertaining to such account since that time. I am the custodian of the records of Wells Fargo for such account.

3.      "The documents attached hereto as Exhibits A, B, C, D and E have been under my care, supervision, direction, custody and/or control.

4.      "Debtor o wns a n unim proved l ot o f l and – 735  Louis H enna B lvd., in  R ound R ock, Williamson County, Texas (as described herein, the "Property").

5.      "On January 8, 2008, Tex-Val, L.P., which is the predecessor-in-interest to Debtor, executed a promissory note payable to Wachovia Bank, N.A., which is the predecessor-in-interest to Wells Fargo, in the amount of $408,000, a true and correct copy of which is attached hereto a s Exhibit "A" a nd which is incorporated by r eference. ("the N ote").  The Note w as interest only for one year, with all principal and interest due and payable on February 8, 2009.

6.      "The Note was secured by a deed of trust and assignment of rents against the Property.  A true and correct copy such deed of trust is attached hereto as Exhibit "B" and is incorporated by reference. ("the Deed of Trust").   The Deed of Trust was duly perfected and recorded at Document number 2008002892 in the Official Public Records of Williamson County, Texas.

7.      "On February 17, 2009, Tex-Val, L.P. and Wachovia Bank executed Modification Number One to the Note, (the "Extension"), which was payable on an interest-only basis for six months, with all interest and principal being due and payable on August 7, 2009.  A true and correct copy of the Extension is attached hereto as Exhibit "C" and is incorporated by reference.

8.      "On June 20, 2010, Debtor FSI-TexVal, L.L.C. purchased the Property from its predecessor in interest, Tex-Val, L.P., promising to pay all indebtedness under the Note and Extension originally owing to Wachovia Bank (the "Warranty Deed (Assumption)").  A true and correct copy of the Warranty Deed (Assumption) is attached hereto as Exhibit "D" and is incorporated by reference.

9.      "On June 30, 2010, Debtor, its predecessor in interest Tex-Val, L.P., Wachovia Bank, and Wells Fargo, the successor-by-merger to Wachovia Bank, entered into a Modification, Extension and Assumption Agreement, (the "Assumption Agreement"), whereby Debtor agreed

to repay to Wells Fargo all indebtedness under the Note and Extension originally owing to Wachovia Bank, which was still secured the Deed of Trust against the Property. Pursuant to the terms of the Assumption Agreement, all principal and interest under the Note and Extension became due and payable on November 1, 2010. A true and correct copy of the Assumption Agreement is attached hereto as Exhibit "E" and is incorporated by reference.

10.    "Debtor did not pay to Wells Fargo any of the principal or interest owing under the Note or the Extension on its maturity date of November 1, 2010. Wells Fargo made demand upon Debtor and instituted foreclosure proceedings on the Property in May 2011, noticing the foreclosure sale to occur on June 7, 2011. On June 6, 2011, Debtor filed this case, thereby staying the foreclosure of the Property upon which Wells Fargo has a secured lien.

11.    "As of the Petition Date, Debtor owed to Wells Fargo a total of $447,310.21 under the Note and its Extension, representing unpaid principal, interest, late charges, and costs incident to collection on the indebtedness. A breakdown of such amounts is as follows:

Principal: $407,458.25
Interest: $28,329.17
Late Charges: $152.79
Appraisal: $1,000
Environmental Phase One: $1,875
Environmental Phase Two: $8,495

12.    "Wells Fargo had an appraisal performed on the Property dated March 30, 2011. The Property's value, according to Wells Fargo's appraisal, is only $315,000.00.

13.    "The exhibits attached hereto were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. The exhibits attached hereto were kept in the course of Wells Fargo's regularly conducted activity; and the exhibits attached hereto were made by as a regular practice at Wells Fargo.

3

14. "The source of the information, and the method and circumstance of the preparation establish the trustworthiness of the documents attached hereto as Exhibits A, B, C, D, and E.

15. "The documents attached hereto as Exhibits A, B, C, D, and E are true and correct duplicates of the originals."

Further, Affiant sayeth not.

_____
Geoffrey Austin

SUBSCRIBED AND SWORN TO BEFORE ME on this the 7th day of September, 2011.

_____
Notary Public
In and For The State of Texas



TO CERTIFY THAT THIS IS A CORRECT COPY OF THE ORIGINAL HERITAGE TITLE COMPANY OF AUSTIN

# PROMISSORY NOTE

$408,000.00

January 8, 2008

Tex - Val, L.P.
600 Round Rock West Drive 404
Round Rock, Texas 78681
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Dallas, Texas 75001
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America by mailing to the address specified hereinafter or wherever else Bank may specify, the sum of Four Hundred Eight Thousand and No/100 Dollars ($408,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows: purchase investment property.

**SECURITY.** Borrower has granted or will grant Bank a security interest in the collateral described in the Loan Documents and such other security instruments as are executed from time to time, including, but not limited to, real and personal property collateral described in that certain security instrument, of even date herewith, as modified, restated or replaced from time to time.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of 7.87% ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEES COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**PREPAYMENT ALLOWED.** This Note may be prepaid in whole or in part at any time. Any prepayment shall include accrued interest and all other sums then due under any of the Loan Documents (as defined below). No partial prepayment shall affect Borrower's obligation to make any payment of principal or interest due under this Note on the date specified below in the Repayment Terms paragraph of this Note until this Note has been paid in full.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on February 8, 2008, and continuing on the same day of each month



EXHIBIT
A



thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on February 8, 2009.

**AUTOMATIC DEBIT OF CHECKING ACCOUNT FOR LOAN PAYMENT.** Borrower authorizes Bank to debit demand deposit account number 200003042994 or any other account with Wachovia Bank (routing number 111015159) designated in writing by Borrower, beginning February 8, 2008 for any payments due under this Note. Borrower further certifies that Borrower holds legitimate ownership of this account and preauthorizes this periodic debit as part of its right under said ownership.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

Note doc

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions; (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/programs/index.shtml, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/index.shtml, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted in accordance with federal law and, except as preempted by federal law, the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any

commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state named in the Bank's address on the first page hereof. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Payments.** All payments shall be mailed to Bank at Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or other such address as provided by Bank in writing. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the address for payments set forth above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts. **FINAL AGREEMENT. THIS NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.**

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF,** Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

Tex - Val, L.P.

By: Hammoud Inc, General Partner

By: _____ (SEAL)
Arder Hammoud, President

Tracking # 1655622128
CAT - Deal # 1655622128  Facility ID 1655709331

T
12 PGS

2008002892

0806P10207¿

PREPARED BY: Lori Abernathy
RETURN TO: Collateral Servicing Department, NC6375
Wachovia Bank, National Association
Commercial Loan Services
Collateral Servicing Department
P.O. Box 2705
Winston-Salem, NC 27199-8182

# DEED OF TRUST AND ASSIGNMENT OF RENTS

This DEED OF TRUST AND ASSIGNMENT OF RENTS (hereafter referred to as "Deed of Trust") made January 8, 2008 by and among Tex - Val, L.P., whose address is 600 Round Rock West Drive 404, Round Rock, Texas 78681 ("Grantor"), TRSTE, Inc., a Virginia corporation qualified to do business in Texas, whose mailing address is 10 South Jefferson Street, Roanoke, VA 24011, ("Trustee") and the owner and holder of a promissory note, Wachovia Bank, National Association, a national banking association, whose address is Dallas, Texas 75001 ("Bank"). Bank and Trustee are the grantees hereunder for indexing purposes by the clerk of court.

## WITNESSETH:

To secure payment and performance of obligations under a Promissory Note (the "Note") dated January 8, 2008, in the amount of $408,000.00, made by Grantor payable to Bank, any present or future Letters of Credit issued by Bank for the account of Grantor, other loan documents as defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), all other indebtedness of Grantor to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing (collectively the "Obligations"), and in consideration of these premises and for other consideration, Grantor does grant and convey unto Trustee, as trustee for Bank and Bank's affiliates in fee simple, all of Grantor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"): (i) all those certain tracts of land in the County of Williamson, State of Texas described in EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon; and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefiting the Land; all means of access to and from the Land, whether public or private; and all water and mineral rights.

In the event that Grantor is the owner of a leasehold estate with respect to any portion of the Property and Grantor obtains a fee estate in such portions of the Property, then, such fee estate shall automatically, and without further action of any kind on the part of the Grantor, be and become subject to the security title and lien of this Agreement.

TO HAVE AND TO HOLD the Property and all the estate, right, title and interest, in law and in equity, of Grantor's in and to the Property unto Trustee, its successors and assigns, in fee simple, forever.

IN TRUST, HOWEVER, TO THAT EXTENT PERMITTED UNDER APPLICABLE LAW, that if all Obligations are timely paid and performed and each and every representation, warranty, agreement, and condition of this Deed of Trust, the other Loan Documents, and any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) are complied with and abided by, this Deed of Trust and the estate hereby created shall cease and be null, void, and canceled of record at the request and expense of Grantor, and if Default (as hereinafter defined) occurs, Trustee is authorized to foreclose and sell the

Property under power of sale or by judicial proceeding according to applicable law and as provided herein.

Grantor WARRANTS AND REPRESENTS that Grantor is lawfully seized of the Property, in fee simple, absolute, that Grantor has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances. Grantor further warrants and will forever defend all and singular the Property and title thereto to Trustee, Bank and Bank's successors and assigns, against the lawful claims of all persons whomsoever.

To protect the security of this Deed of Trust, Grantor further represents and agrees with Trustee and Bank as follows:

**Payment of Obligations.** That the Obligations shall be timely paid and performed.

**Future Advances.** This Deed of Trust is given to secure not only existing Obligations, but also future advances, including obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) to the same extent as if such future advances and obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) are made on the date of the execution of this Deed of Trust, it being contemplated by Grantor and Bank that Grantor may hereafter become indebted to Bank for further sums. Grantor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Deed of Trust.

Nothing herein obligates Bank to provide credit in excess of the Obligations.

**Leases, Subleases and Easements.** Grantor shall maintain, enforce and cause to be *performed all of the terms and conditions under any lease, sublease or easement which may constitute a* portion of the Property. Grantor shall not, without the consent of Bank (which consent shall not be unreasonably withheld or delayed), enter into any new lease of all or any portion of the Property, agree to the cancellation or surrender under any lease of all or any portion of the Property, agree to prepayment of rents, issues or profits (other than rent paid at the signing of a lease or sublease), modify any such lease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported new lease, cancellation, surrender, prepayment or modification made without the consent of Bank shall be void as against Bank.

**Required Insurance.** Grantor shall maintain with respect to the Property: (i) during construction of any improvements on the Property, "all-risk" builders risk insurance which must include windstorm, hail damage, fire and vandalism (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the completed replacement value of the improvements under construction, naming Bank as mortgagee and loss payee; (ii) upon completion of construction, upon occupancy of any improvements, and at all other times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis, including malicious mischief coverage, in an amount not less than the replacement cost thereof, including coverage for loss of rents or business interruption if applicable, naming Bank as loss payee and mortgagee; (iii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated thereunder, flood insurance is required in the amount equal to the lesser of the loan amount or maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Bank as mortgagee and loss payee. If, after closing, the Property (or any part thereof) is remapped and if the vertical improvements are determined to be located in a special flood hazard area, Grantor must obtain and maintain a flood insurance policy. If, within forty-five (45) days of receipt of notification from Bank that the Property has been reclassified by FEMA as being located in a special flood hazard area, Grantor has not provided sufficient evidence of flood insurance, Bank is mandated under federal law to purchase flood insurance on behalf of Grantor, and Bank will add the associated costs to the principal balance of the Note. If the land or any portion thereof is located in a special flood hazard area, this Agreement may be terminated by Bank at its sole option; (iv) as applicable, insurance which complies with the workers' compensation and employers' liability laws of all states in which Grantor shall be required to maintain such insurance; and (v) liability insurance providing coverage

in such amount as Bank may require but in no event less than $1,000,000.00 combined single limit, naming Bank as an additional insured; and (vi) such other insurance as Bank may require from time to time.

All property insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Bank that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Grantor and the further agreement (within both the property and liability policies) of the insurer waiving rights of subrogation against Bank, and rights of set-off, counterclaim or deductions against Grantor.

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Bank. At least 30 days prior to the expiration of each such policy, Grantor shall furnish Bank with evidence satisfactory to Bank that such policy has been renewed or replaced or is no longer required hereunder. All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Bank. In the event Grantor fails to provide, maintain, keep in force, and furnish to Bank the policies of insurance required by this paragraph, Bank may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Bank chooses, at Grantor's expense; provided however, Bank shall have no responsibility to obtain any insurance, but if Bank does obtain insurance, Bank shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Grantor.

**Insurance Proceeds.** After occurrence of any loss to any of the Property, Grantor shall give prompt written notice thereof to Bank.

In the event of such loss all insurance proceeds, including unearned premiums, shall be payable to Bank, and Grantor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Bank and not to Bank and Grantor jointly. Bank is hereby authorized by Grantor to make proof of loss if not promptly made by Grantor, settle, adjust or compromise any claims for loss or damage under any policy or policies of insurance and Grantor appoints Bank as its attorney-in-fact to receive and endorse any insurance proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied. Grantor shall pay the costs of collection, including attorneys' fees, of insurance proceeds payable on account of such damage or destruction. Grantor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Bank as security for payment of the Obligations.

In the event of any damage to or destruction of the Property, Bank shall have the option of applying or paying all or part of the insurance proceeds to (i) the Obligations in such order as Bank may determine, (ii) restoration, replacement or repair of the Property in accordance with Bank's standard construction loan disbursement conditions and requirements, or (iii) Grantor. Nothing herein shall be deemed to excuse Grantor from restoring, repairing and maintaining the Property as required herein.

**Impositions; Escrow Deposit.** Grantor will pay all taxes, levies, assessments and other fees and charges imposed upon or which may become a lien upon the Property under any law or ordinance (all of the foregoing collectively "Impositions") before they become delinquent and in any event in the same calendar year in which they first become due. Upon request of Bank, Grantor shall add to each periodic payment required under the Note the amount estimated by Bank to be sufficient to enable Bank to pay, as they come due, all Impositions and insurance premiums which Grantor is required to pay hereunder. Payments requested under this provision shall be supplemented or adjusted as required by Bank from time to time. Such funds may be commingled with the general funds of Bank and shall not earn interest. Upon the occurrence of a Default, Bank may apply such funds to pay any of the Obligations.

**Use of Property.** Grantor shall use and operate, and require its lessees or licensees to use and operate, the Property in compliance with all applicable laws (including, for example, the Americans with

Disabilities Act and the Fair Housing Act) and ordinances, covenants, and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Property. Grantor shall not permit any unlawful use of the Property or any use that may give rise to a claim of forfeiture of any of the Property. Grantor shall not allow changes in the stated use of Property from that disclosed to Bank at the time of execution hereof. Grantor shall not initiate or acquiesce to a zoning change of the Property without prior notice to, and written consent of, Bank.

**Maintenance, Repairs and Alterations.** Grantor shall keep and maintain the Property in good condition and repair and fully protected from the elements to the satisfaction of Bank. Grantor will not remove, demolish or structurally alter any of the buildings or other improvements on the Property (except such alterations as may be required by laws, ordinances or regulations) without the prior written consent of Bank. Grantor shall promptly notify Bank in writing of any material loss, damage or adverse condition affecting the Property.

**Eminent Domain.** Should the Property or any interest therein be taken or damaged by reason of any public use or improvement or condemnation proceeding ("Condemnation"), or should Grantor receive any notice or other information regarding such Condemnation, Grantor shall give prompt written notice thereof to Bank. Bank shall be entitled to all compensation, awards and other payments or relief granted in connection with such Condemnation and, at its option, may commence, appear in and prosecute in its own name any action or proceedings relating thereto. Bank shall be entitled to make any compromise or settlement in connection with such taking or damage. All compensation, awards, and damages awarded to Grantor related to any Condemnation (the "Proceeds") are hereby assigned to Bank and Grantor agrees to execute such further assignments of the Proceeds as Bank may require. Bank shall have the option of applying or paying the Proceeds in the same manner as insurance proceeds as provided herein. Grantor appoints Bank as its attorney-in-fact to receive and endorse the Proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied.

**Environmental Condition of Property and Indemnity.** Grantor warrants and represents to Bank, except as reported by Grantor to Bank in writing, that: (i) Grantor has inspected and is familiar with the environmental condition of the Property; (ii) the Property and Grantor, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("Environmental Laws"); (iii) the Property is not and has never been used to generate, handle, treat, store or dispose of, in any quantity, oil, petroleum products, hazardous or toxic substances, hazardous waste, regulated substances or hazardous air pollutants ("Hazardous Materials") in violation of any Environmental Laws; (iv) no Hazardous Materials (including asbestos, mold or lead paint in any form) are located on or under the Property or emanate from the Property; (v) there are no unregistered underground storage tanks on the Property that are subject to any underground storage tank registration laws or regulations; (vi) no notice has been received with regard to any Hazardous Material on the Property; (vii) no action, investigation or proceeding is pending or to Grantor's knowledge threatened which seeks to enforce any right or remedy against Grantor or the Property under any Environmental Law; and (viii) all licenses, permits and other governmental or regulatory actions necessary for the Property to comply with Environmental Laws shall be obtained and maintained and Grantor shall assure compliance therewith.

Further, Grantor represents to Bank that no portion of the Property is a protected wetland. Grantor agrees to notify Bank immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property and shall conduct and complete all investigations and all cleanup actions necessary to comply with the Environmental Laws and to remove, in accordance with Environmental Laws, any Hazardous Material from the Property.

Grantor shall indemnify, hold harmless, and defend Bank and Trustee from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against

Bank or Trustee as a direct or indirect result of: (i) representations made by Grantor in this Section being or becoming untrue in any material respect; (ii) Grantor's violation of or failure to meet the requirements of any Environmental Laws; or (iii) Hazardous Materials which, while the Property is subject to this Deed of Trust, exist on the Property. Bank shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after Default (as hereinafter defined) or which are required by laws or regulations applicable to Bank shall be borne by Grantor. However, Grantor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Deed of Trust. These indemnification obligations are in addition to General Indemnification provisions set forth hereafter. Grantor's Obligations under this section shall continue, survive and remain in full force and effect notwithstanding the repayment of the Obligations, a foreclosure of or exercise of power of sale under this instrument, a delivery of a deed in lieu of foreclosure, a cancellation or termination of record of this instrument and the transfer of the Property.

**Appraisals.** Grantor agrees that Bank may obtain an appraisal of the Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any other regulatory agency or at such other times as Bank may reasonably require. Such appraisals shall be performed by an independent third party appraiser selected by Bank. The cost of such appraisals shall be borne by Grantor. If requested by Bank, Grantor shall execute an engagement letter addressed to the appraiser selected by Bank. Grantor's failure or refusal to sign such an engagement letter, however, shall not impair Bank's right to obtain such an appraisal. Grantor agrees to pay the cost of such appraisal within 10 days after receiving an invoice for such appraisal.

**Inspections.** Bank, or its representatives or agents, are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the Property and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

**Liens and Subrogation.** Grantor shall pay and promptly discharge all liens, claims and encumbrances upon the Property. Grantor shall have the right to contest in good faith the validity of any such lien, claim or encumbrance, provided: (i) such contest suspends the collection thereof or there is no danger of the Property being sold or forfeited while such contest is pending; (ii) Grantor first deposits with Bank a bond or other security satisfactory to Bank in such amounts as Bank shall reasonably require; and (iii) Grantor thereafter diligently proceeds to cause such lien, claim or encumbrance to be removed and discharged.

Bank shall be subrogated to any liens, claims and encumbrances against Grantor or the Property that are paid or discharged through payment by Bank or with loan proceeds, notwithstanding the record cancellation or satisfaction thereof.

**Waiver of Grantor's Rights.** To the fullest extent permitted by law, Grantor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Property, (ii) in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or any of the other Obligations, and any rights to hearing prior to the exercise by Bank of any right, power, or remedy herein provided to Bank.

To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension or redemption, and Grantor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created. Grantor further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

**Payments by Bank.** In the event of Default (as hereinafter defined) in the timely payment or performance of any of the Obligations, Bank, at its option and without any duty on its part to determine the validity or necessity thereof, may pay the sums for which Grantor is obligated. Further, Bank may pay such sums as Bank deems appropriate for the protection and maintenance of the Property including, without limitation, sums to pay Impositions and other levies, assessments or liens, maintain insurance, make repairs, secure the Property, maintain utility service, intervene in any condemnation and pay attorneys' fees and other fees and costs to enforce this Deed of Trust or protect the lien hereof (including foreclosure) or collect the Obligations, without limitation, including those incurred in any proceeding including bankruptcy or arbitration. Any amounts so paid shall bear interest at the default rate stated in the Note and shall be secured by this Deed of Trust.

**INDEMNIFICATION.** GRANTOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS BANK FROM AND AGAINST ALL LOSSES, LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, FINES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) (COLLECTIVELY, "DAMAGES") IMPOSED UPON, INCURRED BY OR ASSERTED OR ASSESSED AGAINST BANK ON ACCOUNT OF OR IN CONNECTION WITH (I) THE LOAN DOCUMENTS OR ANY FAILURE OR ALLEGED FAILURE OF GRANTOR TO COMPLY WITH ANY OF THE TERMS OF, OR THE INACCURACY OR BREACH OF ANY REPRESENTATION IN, THE LOAN DOCUMENTS; (II) THE COLLATERAL OR ANY CLAIM OF LOSS OR DAMAGE TO THE PROPERTY OR ANY INJURY OR CLAIM OF INJURY TO, OR DEATH OF, ANY PERSON OR PROPERTY THAT MAY BE OCCASIONED BY ANY CAUSE WHATSOEVER PERTAINING TO THE PROPERTY OR THE USE, OCCUPANCY OR OPERATION THEREOF, (III) ANY FAILURE OR ALLEGED FAILURE OF GRANTOR TO COMPLY WITH ANY LAW, RULE OR REGULATION APPLICABLE TO IT OR TO THE PROPERTY OR THE USE, OCCUPANCY OR OPERATION OF THE PROPERTY (INCLUDING, WITHOUT LIMITATION, THE FAILURE TO PAY ANY TAXES, FEES OR OTHER CHARGES), (IV) ANY DAMAGES WHATSOEVER BY REASON OF ANY ALLEGED ACTION, OBLIGATION OR UNDERTAKING OF BANK RELATING IN ANY WAY TO OR ANY MATTER CONTEMPLATED BY THE LOAN DOCUMENTS, (V) ANY CLAIM FOR BROKERAGE FEES OR SUCH OTHER COMMISSIONS RELATING TO THE PROPERTY OR ANY OTHER OBLIGATIONS, OR (VI) ANY AND ALL LIABILITY ARISING FROM ANY LEASES RELATED TO THE PROPERTY. NOTHING CONTAINED HEREIN SHALL REQUIRE GRANTOR TO INDEMNIFY BANK FOR ANY DAMAGES RESULTING FROM BANK'S GROSS NEGLIGENCE OR ITS WILLFUL AND WRONGFUL ACTS, AND SUCH INDEMNITY SHALL BE EFFECTIVE ONLY TO THE EXTENT OF ANY DAMAGES THAT MAY BE SUSTAINED BY BANK IN EXCESS OF ANY NET PROCEEDS RECEIVED BY IT FROM ANY INSURANCE OF GRANTOR (OTHER THAN SELF-INSURANCE) WITH RESPECT TO SUCH DAMAGES. THE INDEMNITY PROVIDED FOR HEREIN SHALL SURVIVE PAYMENT OF THE OBLIGATIONS AND SHALL EXTEND TO THE OFFICERS, DIRECTORS, EMPLOYEES AND DULY AUTHORIZED AGENTS OF BANK. IN THE EVENT THE BANK INCURS ANY DAMAGES ARISING OUT OF OR IN ANY WAY RELATING TO THE TRANSACTION CONTEMPLATED BY THE LOAN DOCUMENTS (INCLUDING ANY OF THE MATTERS REFERRED TO IN THIS SECTION), THE AMOUNTS OF SUCH DAMAGES SHALL BE ADDED TO THE OBLIGATIONS, SHALL BEAR INTEREST, TO THE EXTENT PERMITTED BY LAW, AT THE INTEREST RATE BORNE BY THE OBLIGATIONS FROM THE DATE INCURRED UNTIL PAID AND SHALL BE PAYABLE ON DEMAND.

**Assignment of Rents.** Grantor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively "Rents"). Although this assignment is effective immediately, so long as no Default exists, Bank gives to and confers upon Grantor the privilege under a revocable license to collect as they become due, but not prior to accrual, the Rents and to demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Grantor for all such Rents. Grantor represents there has been no prior assignment of leases or Rents, and agrees not to further assign such leases or Rents. Upon any occurrence of Default, the license granted to Grantor herein shall be automatically revoked without further notice to or demand upon Grantor, and Bank shall have the right, in its discretion, without notice, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Obligations, (i) to enter upon and take possession of the Property, (ii) notify tenants, subtenants and any property manager to pay Rents to Bank

or its designee, and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Grantor, and (iii) in its own name, sue for or otherwise collect Rents, including those past due, and apply Rents, less costs and expenses of operation and collection, including attorneys' fees, to the Obligations in such order and manner as Bank may determine or as otherwise provided for herein. Bank's exercise of any one or more of the foregoing rights shall not cure or waive any Default or notice of Default hereunder.

**Due on Sale or Further Encumbrance or Transfer of an Interest in Grantor.** Without the prior written consent of Bank in each instance, Grantor shall not (i) sell, convey, transfer or encumber the Property, or any part thereof or interest therein, whether legal or equitable, (ii) cause or permit any transfer of the Property or any part thereof, whether voluntarily, involuntarily or by operation of law, or (iii) enter into any agreement or transaction to transfer, or accomplish in form or substance a transfer, of the Property. A "transfer" of the Property includes: (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein; (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Property; (c) if Grantor or any general partner or member of Grantor, is a corporation, partnership, limited liability company, trust or other business entity, the transfer, pledge, assignment or encumbrance (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity including, without limitation, changes in stockholders, partners, members, managers, trustees, beneficiaries, or their respective interests; whether directly or indirectly; (d) if Grantor, or any general partner or member of Grantor, is a corporation, the creation or issuance of new stock by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders; and (e) an agreement by Grantor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases.

Bank's consent to any conveyance or encumbrance may be conditioned upon an increase in the interest rate specified in the Note (or other Obligations), an extension or curtailment of the maturity of the Obligations, or other modification of the Note or this instrument.

**Remedies of Bank on Default.** Failure of Grantor or any other person liable to timely pay or perform any of the Obligations or a violation of the preceding section is a default ("Default") under this Deed of Trust. Upon the occurrence of Default the following remedies are available, without limitation, to Bank: (i) Bank may exercise any or all of Bank's remedies under this Deed of Trust or other Loan Documents including, without limitation, acceleration of the maturity of all payments and Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or any of its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time); (ii) Bank may take immediate possession of the Property or any part thereof (which Grantor agrees to surrender to Bank) and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply Rents to the payment of: (a) the Obligations, together with all costs and attorneys' fees; (b) all Impositions and any other levies, assessments or liens which may be prior in lien or payment to the Obligations, and premiums for insurance, with interest on all such items; and (c) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof; all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not prevent concurrent or later proceedings for the foreclosure sale of the Property; (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. In the event of such application, Grantor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Grantor, without regard to whether Grantor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Grantor or any other person, firm or corporation who or which may be liable for the payment of the Obligations; (iv) Upon application of Bank, Trustee shall sell the Property and pay the proceeds of sale according to the following terms and conditions: (a) Trustee shall foreclose upon this Deed of Trust and sell the Property, or any part of the Property, at public sale conducted

according to applicable law (referred to as "Trustee's Sale"); (b) Trustee shall provide such notice and shall advertise a Trustee's Sale in the manner required by applicable law; (c) Trustee shall conduct additional Trustee's Sales as may be required until all of the Property is sold or the Obligations are satisfied; (d) Trustee may receive bids at Trustee's Sale from the Bank and may accept from Bank as successful bidder, credit against the Obligations as payment of any portion of the purchase price; (e) Trustee may receive a reasonable fee for Trustee's services hereunder, not to exceed the maximum fee allowed by applicable law; and (f) Trustee shall apply the proceeds of Trustee's Sale, first to any permitted Trustee's fee, second to expenses of foreclosure and sale, third to the Obligations, and any remaining proceeds as required by law, and (v) With respect to any portion of the Property governed by the UCC, Bank shall have all of the rights and remedies of a secured party thereunder. Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property.

**Substitute Trustee.** Bank may, at any time and from time to time, without notice, at the Bank's discretion, remove Trustee and appoint a substitute trustee ("Substitute Trustee") by filing in the records where this Deed of Trust is recorded an instrument affecting such removal and appointment. A Substitute Trustee shall be vested with title to the Property and with all rights, powers, and duties of the original Trustee herein and all provisions hereof pertaining to the Trustee shall similarly affect any Substitute Trustee. Any oath or bond by the Trustee is hereby waived.

**Miscellaneous Provisions.** Grantor agrees to the following: (i) All remedies available to Bank with respect to this Deed of Trust or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default; (ii) Grantor represents that Grantor (a) is (1) an adult individual and is *sui juris*, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Deed of Trust and any other Loan Document to which it is a party. (iii) The provisions hereof shall be binding upon and inure to the benefit of Grantor, its heirs, personal representatives, successors and assigns including, without limitation, subsequent owners of the Property or any part thereof, and shall be binding upon and inure to the benefit of Bank, its successors and assigns and any future holder of the Note or other Obligations; (iv) Any notices, demands or requests shall be sufficiently given Grantor if in writing and mailed or delivered to the address of Grantor shown above or to another address as provided herein and to Bank if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011, or such other address as Bank may specify from time to time and in the event that Grantor changes Grantor's address at any time prior to the date the Obligations are paid in full, that party shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid. Notices to Bank must include the mail code. (v) All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or such other address as provided by Bank in writing. (vi) This Deed of Trust may be terminated or modified only by an instrument in writing signed by the Bank and Grantor and may be modified without the Trustee joining or signing such instrument; (vii) All references to "Bank" shall mean to "Bank (for itself and its affiliate)"; (viii) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Deed of Trust; (ix) If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Obligations, the unsecured portion of the Obligations shall be completely paid (and all payments made shall be deemed to have first been applied to payment of the unsecured portion of the Obligations) prior to payment of the secured portion of the Obligations and if any clause, provision or obligation hereunder is determined invalid or unenforceable the remainder of this Deed of Trust shall be construed and enforced as if such clause, provision or obligation had not been contained herein; (x) This Deed of Trust shall be governed by and construed under the laws of the

jurisdiction where this Deed of Trust is recorded; (xi) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provisions hereof. **FINAL AGREEMENT. THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.**

**Minimum Standards.** In addition to the requirements set forth in the Loan Documents, all surveys, insurance, title policies, construction documents, environmental reports, payment and performance bonds, and any other due diligence or additional documents required in connection with this Loan, shall comply with Bank's minimum standards in place from time to time for such documents, which shall be provided in writing by Bank to Borrower upon request.

**IN WITNESS WHEREOF,** Grantor has duly signed and sealed this instrument as of the day and year first above written.

Grantor

Tex - Val, L.P.

By: Hammoud Inc, General Partner

CORPORATE
SEAL

By: _____

Amer Hammoud, President

State of Texas

County of Williamson

### Corporate General Partner Acknowledgment

BEFORE ME, the undersigned authority, on this day personally appeared Amer Hammoud as President of Hammoud Inc, a Texas corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of said corporation.

Given under my hand and seal of office, this the _8_ day of _January, 2008_

_____

Notary Public in and for the State of Texas
My Commission Expires:

_____

Kathy S. Nunn
Notary Public
State of Texas
My Commission Expires
APRIL 11, 2008

Tracking #: 1655622128
CAT - Deal # 1655622128  Facility ID 1655709331

# EXHIBIT A

This Exhibit A is attached to a certain Deed of Trust by and between Tex - Val, L.P., and Wachovia Bank, National Association, securing that certain Promissory Note of even date herewith executed by Tex - Val, L.P. in the amount of $408,000.00 dated January 8, 2008.

# EXHIBIT "A"

Loan Number 1655622128

ALL THAT CERTAIN TRACT OR PARCEL OF LAND SITUATED IN THE MEMUCAN HUNT SURVEY, A-314, IN WILLIAMSON COUNTY, TEXAS AND BEING A PART OF A 2.00 ACRE TRACT OF LAND CONVEYED TO LARRY LEA ET UX BY DEED RECORDED IN VOLUME 923, PAGE 228, OF THE DEED RECORDS OF WILLIAMSON COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT AN IRON PIN FOUND IN AN ANGLE POINT OF THE WEST LINE OF A 1.513 ACRE TRACT OF LAND DESCRIBED IN VOLUME 873, PAGE 677 OF THE ABOVE MENTIONED DEED RECORDS AND THE MOST EASTERLY NORTHEAST CORNER OF A 6.001 ACRE TRACT DESCRIBED IN VOLUME 2001016282 OF THE OFFICIAL RECORDS OF WILLIAMSON COUNTY, TEXAS FOR THE SOUTHEAST CORNER OF THE ABOVE MENTIONED 2.00 ACRE TRACT AND THE SOUTHEAST CORNER OF THIS TRACT;

THENCE S 75° 51' 51" W 216.10 FEET TO AN IRON PIN FOUND IN AN INTERIOR CORNER OF THE ABOVE MENTIONED 6.001 ACRE TRACT AND THE SOUTHWEST CORNER OF THE SAID 2.00 ACRE FOR THE SOUTHWEST CORNER OF THIS TRACT.

THENCE N 01° 58' 23" W WITH THE WEST LINE OF THE SAID 2.00 ACRE TRACT 165.40 FEET TO AN IRON PIN WITH ALUMINUM CAP FOUND ON THE CURVING SOUTH LINE OF LOUIS HENNA BOULEVARD (STATE HIGHWAY #45) FOR THE MOST NORTHERLY NORTHEAST CORNER OF THE SAID 6.001 ACRE TRACT FOR THE NORTHWEST CORNER OF THIS TRACT;

THENCE WITH THE SOUTH LINE OF LOUIS HENNA BOULEVARD WITH THE ARC OF THE SAID CURVE TO THE LEFT 215.76 FEET, SAID CURVE HAVING A RADIUS OF 5788.00 FEET A CENTRAL ANGLE OF 02° 08' 09" AND A SUB-CHORD WHICH BEARS N 76° 40'14" E 215.75 FEET TO AN IRON PIN FOUND ON THE WEST LINE OF THE ABOVE MENTIONED 1.513 ACRE TRACT AND THE EAST LINE OF THE SAID 2.00 ACRE TRACT FOR THE NORTHEAST CORNER OF THIS TRACT;

THENCE S 01° 52' 30" E 162.35 FEET TO THE POINT OF BEGINNING, CONTAINING 0.792 ACRES OF LAND, MORE OR LESS.

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS   2008002892

*Nancy E. Rister*

01/10/2008 02:36 PM

SURRATT $60.00

NANCY E. RISTER, COUNTY CLERK

WILLIAMSON COUNTY, TEXAS

08066P102084

# MODIFICATION NUMBER ONE
# TO PROMISSORY NOTE

Tex - Val, L.P.
600 Round Rock West Drive 404
Round Rock, Texas 78681
(Hereinafter referred to as "Borrower")

Wachovia Bank, National Association
Dallas, Texas 75001
(Hereinafter referred to as "Bank")

THIS AGREEMENT is entered into as of February 17, 2009 by and between Bank and Borrower.

## RECITALS

Bank is the holder of a Promissory Note, as modified from time to time, executed and delivered by Borrower, dated January 8, 2008, in the original principal amount of $408,000.00 (the "Note");

Borrower and Bank have agreed to modify the terms of the Note.

In consideration of Bank's continued extension of credit and the agreements contained herein, the parties agree as follows:

## AGREEMENT

**ACKNOWLEDGMENT OF BALANCE.** Borrower acknowledges that the most recent Commercial Loan Invoice sent to Borrower with respect to the Obligations under the Note is correct.

**MODIFICATIONS.**

1. The Note is hereby modified by deleting the provisions in the Note establishing the applicable interest rate and any indemnification or prepayment obligations, and substituting the following in their place and stead:

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note at the rate of 8.0% ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEES COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**PREPAYMENT ALLOWED.** This Note may be prepaid in whole or in part at any time. Any prepayment shall include accrued interest and all other sums then due under any of the Loan Documents (as defined below). No partial prepayment shall affect Borrower's obligation to make any payment of principal or

interest due under this Note on the date specified below in the Repayment Terms paragraph of this Note until this Note has been paid in full.

2. The Note is hereby modified by deleting the provisions in the Note establishing the repayment terms and substituting the following in their place and stead:

**REPAYMENT TERMS.** The Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on March 9, 2009, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on August 7, 2009.

**ACKNOWLEDGMENTS AND REPRESENTATIONS.** Borrower acknowledges and represents that the Note and other Loan Documents, as amended hereby, are in full force and effect without any defense, counterclaim, right or claim of set-off; that, after giving effect to this Agreement, no default or event that with the passage of time or giving of notice would constitute a default under the Loan Documents has occurred, all representations and warranties contained in the Loan Documents are true and correct as of this date, all necessary action to authorize the execution and delivery of this Agreement has been taken; and this Agreement is a modification of an existing obligation and is not a novation.

**COLLATERAL.** Borrower acknowledges and confirms that there have been no changes in the ownership of any collateral pledged to secure the Obligations (the "Collateral") since the Collateral was originally pledged; Borrower acknowledges and confirms that the Bank has existing, valid first priority security interests and liens in the Collateral; and that such security interests and liens shall secure Borrower's Obligations, including any modification of the Note or Loan Agreement, if any, and all future modifications, extensions, renewals and/or replacements of the Loan Documents.

**MISCELLANEOUS.** This Agreement shall be construed in accordance with and governed by the laws of the applicable state as originally provided in the Loan Documents, without reference to that state's conflicts of law principles. This Agreement and the other Loan Documents constitute the sole agreement of the parties with respect to the subject matter thereof and supersede all oral negotiations and prior writings with respect to the subject matter thereof. No amendment of this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto. The illegality, unenforceability or inconsistency of any provision of this Agreement shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Agreement or the other Loan Documents. This Agreement and the other Loan Documents are intended to be consistent. However, in the event of any inconsistencies among this Agreement and any of the Loan Documents, the terms of this Agreement, and then the Note, shall control. This Agreement may be executed in any number of counterparts and by the different parties on separate counterparts. Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement. Terms used in this Agreement which are capitalized and not otherwise defined herein shall have the meanings ascribed to such terms in the Note. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Telephone Communication Monitoring.** Borrower agrees that Borrower's telephone communications with Bank may be monitored and/or recorded to improve customer service

and security. FINAL AGREEMENT. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

WAIVER OF JURY TRIAL. TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS AGREEMENT. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS AGREEMENT.

IN WITNESS WHEREOF, the undersigned have duly signed and sealed this Agreement the day and year first above written.

Tex - Val, L.P.

By: Hammoud, General Partner

By: _____(SEAL)
     Amer Hammoud, President


Wachovia Bank, National Association

By: _____(SEAL)
     Jason Ford, Assistant Vice President

Tracking #: 906353
CAT - Deal # 1093761 Facility ID 861690


NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## WARRANTY DEED (ASSUMPTION)

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WILLIAMSON | § | |

THAT THE UNDERSIGNED, TEX-VAL, L.P., a Texas limited partnership ("Transferor"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Transferor in hand paid by FSI-TEXVAL, LLC, a Texas limited liability company, ("Transferee"), the receipt of which is hereby acknowledged, and the further consideration that Transferee hereby assumes and promises to pay all principal and interest now remaining on that one certain promissory note dated January 8, 2008, in the original principal sum of FOUR HUNDRED EIGHT THOUSAND AND NO/100 DOLLARS ($408,000.00), payable to the order of WACHOVIA BANK, NATIONAL ASSOCIATION ("Lender") and secured in part by a deed of trust of even date therewith recorded under Document No. 2008002892, Official Public Records, Williamson County, Texas (hereinafter the "Deed of Trust"), and that Transferee also assumes and promises to keep and perform all covenants and obligations of the Transferor named in said Deed of Trust, has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto Transferee all of Transferor's right, title and interest in and to the real property described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

This conveyance, however, is made and accepted subject to any and all restrictions, encumbrances, easements, covenants and conditions, if any, relating to the hereinabove described property as the same are filed for record in the County Clerk's Office of Williamson County, Texas. The payment of ad valorem taxes on the property is assumed by Transferee.

This conveyance does not release Transferor from any of Transferor's obligations or liabilities to the Lender under the Deed of Trust or related note and loan documents, all of which Transferor hereby acknowledges and accepts.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Transferee, Transferee's heirs, executors, administrators, successors and assigns forever; and Transferor



EXHIBIT

D

tabbies

does hereby bind Transferor's heirs, executors, administrators, successors and/or assigns to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Transferee, Transferee's heirs, executors, administrators, successors and/or assigns against every person whomsoever claiming or to claim the same or any part thereof.

EXECUTED as of June _____ 2010.

TRANSFEROR:

TEX-VAL, L.P.
a Texas limited partnership

By:  HAMMOUD, INC.
     a Texas corporation
     General Partner

     By:  _____
          Amer J. Hammoud
          President

ACCEPTED AND RATIFIED BY TRANSFEREE:

FSI-TEXVAL, LLC
a Texas limited liability company

By:  _____
     Amer J. Hammoud
     President

FSI-TEXVAL, LLC
Suite 404
600 Round Rock West Drive
Round Rock, Texas 78681

STATE OF TEXAS §
§
COUNTY OF WILLIAMSON §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared Amer J. Hammoud, President HAMMOUD, INC., a Texas corporation, General Partner of TEX-VAL, L.P., a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity therein stated and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the __23__ day of June, 2010.



_____
NOTARY PUBLIC, State of Texas

STATE OF TEXAS §
§
COUNTY OF WILLIAMSON §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared Amer J. Hammoud, President of FSI-TEXVAL, LLC, a Texas limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity therein stated and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the __23__ day of June, 2010.



_____
NOTARY PUBLIC, State of Texas

AFTER RECORDING, RETURN TO:
Marsha L. Dekan, Esq.
SettlePou
3333 Lee Parkway, 8th Floor
Dallas, Texas 75219

---

All that certain tract or parcel of land situated in the Memucan Hunt Survey, A-314, in Williamson County, Texas and being a part of a 2.00 acre tract of land conveyed to Larry Lea et ux by deed recorded in Volume 923, Page 228 of the Deed Records of Williamson County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at an iron pin found in an angle point of the West line of a 1.513 acre tract of land described in Volume 873, Page 677 of the above mentioned Deed Records and the most Easterly Northeast corner of a 6.001 acre tract described in Volume 2001016282 of the Official Records of Williamson County, Texas for the Southeast corner of the above mentioned 2.00 acre tract and the Southeast corner of this tract.

THENCE S 75°51'51" W 216.10 feet to an iron pin found in an interior corner of the above mentioned 6.001 acre tract and the Southwest corner of the said 2.00 acre for the Southwest corner of this tract.

THENCE N 01°58'23" W with the West line of the said 2.00 acre tract 165.40 feet to an iron pin with aluminum cap found on the curving South line of Louis Henna Boulevard (State Highway #45) for the most Northerly Northeast corner of the said 6.001 acre tract for the Northwest corner of this tract.

THENCE with the South line of Louis Henna Boulevard with the arc of the said curve to the left 215.76 feet, said curve having a radius of 5788.00 feet, a central angle of 02°08'09", and a sub-chord which bears N 76°40'14" E 215.75 feet to an iron pin found on the West line of the above mentioned 1.513 acre tract and the East line of the said 2.00 acre tract for the Northeast corner of this tract.

THENCE S 01°52'30" E 162.35 feet to the POINT OF BEGINNING, containing 0.792 acres of land, more or less.

# FILED AND RECORDED
## OFFICIAL PUBLIC RECORDS   2011006768

*Nancy E. Rister*

01/31/2011 09:19 AM
KFOSTER $28.00
NANCY E. RISTER, COUNTY CLERK
WILLIAMSON COUNTY, TEXAS

08-4047($408k)

SettlePou
3333 Lee Parkway 8th floor
Dallas, TX 75219

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### MODIFICATION, EXTENSION AND ASSUMPTION AGREEMENT

---

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WILLIAMSON | § | |

This MODIFICATION AND ASSUMPTION AGREEMENT ("Agreement") between FSI-TEXVAL, LLC, a Texas limited liability company, whose address is 600 Round Rock West Drive, Suite 404, Round Rock, Texas 78681 (hereinafter referred to as "Transferee"), TEX-VAL, L.P., a Texas limited partnership, whose address is 600 Round Rock West Drive, Suite 404, Round Rock, Texas 78681 (hereinafter referred to as "Transferor"), AMER HAMMOUD (the "Original Guarantor"), and WELLS FARGO BANK, N.A., successor-by-merger to WACHOVIA BANK, NATIONAL ASSOCIATION, whose address is 5080 Spectrum Drive, Suite 500E, Addison, Texas 75001 (hereinafter referred to as "Lender").

### WITNESSETH:

WHEREAS, Transferee bought the real property from Transferor on June 30th, 2010, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF (the "Property"),

and Transferee desires to assume a Promissory Note (hereinafter referred to as the "Note") executed by Transferor and guaranteed by Original Guarantors, dated January 8, 2008, in the original principal amount of FOUR HUNDRED EIGHT THOUSAND AND NO/100 DOLLARS ($408,000.00), payable to the order of WACHOVIA BANK, NATIONAL ASSOCIATION, said Note being secured in part by a Deed of Trust (hereinafter the "Deed of Trust") recorded under Document No. 2008002892, Official Public Records, Williamson, County, Texas. The Note, Deed of Trust, any modifications or renewals thereof, and other loan documents executed in connection therewith are hereafter called the "Loan Documents". As of March 18, 2010, the Note had an unpaid principal balance of FOUR HUNDRED EIGHT THOUSAND AND NO/100 DOLLARS ($408,000.00) (the "Indebtedness").

WHEREAS, Transferee desires to assume the repayment of the Indebtedness and all



EXHIBIT E

obligations of Transferor to Lender, as modified herein, (and Transferor desires to continue its obligations thereunder as modified), including, but not limited to, those evidenced by the Note, Deed of Trust and Loan Documents;

WHEREAS, but for this Agreement the Note would be in default, having matured under its own terms on February 8, 2009; and

WHEREAS, the transfer of the Property would also constitute a default under the terms of said Deed of Trust.

NOW, THEREFORE, Transferee and Transferor, in consideration of being authorized to assume the Indebtedness and to induce Lender to forebear from foreclosing; and Lender, in consideration of the covenants and obligations herein expressed by all the parties hereto, in further consideration of the matters recited above, the mutual undertakings of the parties set forth herein and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree as follows:

1.      Transferee hereby assumes all of the obligations of the Transferor to the Lender and assumes and agrees to pay the Indebtedness of the Transferor together with interest per annum (calculated on the basis of a 360-day year) on the unpaid principal balance from day-to-day remaining, computed from the date of advance until maturity at the rate equal to the lesser of (a) the Maximum Rate (as hereinafter defined), or (b) NINE PERCENT (9.00%) (effective as of July 7, 2010). Principal and interest under the Note are due and payable on demand, or if not demanded, as follows:

Payment of all unpaid interest accrued up to July 7, 2010, shall be paid on July 7, 2010. Thereafter, principal and interest thereon shall be due and payable in monthly installments of THREE THOUSAND SEVEN HUNDRED THREE AND 75/100 DOLLARS ($3,703.75) each, with the first such installment being due and payable on August 7, 2010, and with a like installment being due and payable on the same day of each succeeding month thereafter until November 1, 2010 (the "Maturity Date"), when all outstanding principal thereon plus all accrued but unpaid interest thereon shall be finally due and payable. All payments received thereon shall be applied first to the payment of accrued interest on the unpaid principal, with the remainder, if any, applied to reduction of principal.

The term "Maximum Rate," as used herein, shall mean, with respect to each holder hereof, the maximum nonusurious interest rate, if any, that at any time, or from time to time, may under applicable law be contracted for, taken, reserved, charged or received on the indebtedness evidenced by this Note under the laws which are presently in effect of the United States and the State of Texas applicable to such holder and such indebtedness or, to the extent allowed by law under such applicable laws of the United States of America and the State of Texas which may hereafter be in effect, which allow a higher maximum non-usurious interest rate than applicable laws now allow; provided, that in determining the Maximum Rate, due regard shall be given, to the extent required by applicable law, to any and all relevant payments, fees, charges,

deposits, balances, agreements and calculations which may constitute or be deemed to constitute interest, or be deducted from principal to calculate the interest rate or otherwise affect interest rate determinations, so that in no event shall the Lender contract for, charge, receive, take, collect, reserve or apply, on the Note, any amount in excess of the maximum non-usurious rate of interest permitted by applicable law. To the extent that Texas law determines the Maximum Rate, the Maximum Rate shall be determined by utilizing the "indicated rate ceiling" from time to time in effect pursuant to the Texas Finance Code (V.T.C.A. Finance Code Section 303.001 et seq.) (the "Texas Finance Code") or such successor statute, as then in effect, governing usury. The Maximum Rate shall not be limited to the applicable rate ceiling in the Texas Finance Code or such successor statute if Federal laws or other state laws now or hereafter in effect and applicable to this Note (and the interest contracted for, charged and collected hereunder) shall permit a higher rate of interest.

Transferee, Transferor and Lender intend to comply with the applicable law governing the Maximum Rate. Interest contracted for, charged, or received shall not exceed the Maximum Rate, and, if in any contingency whatsoever, Lender shall receive anything of value deemed interest under applicable law which would cause the interest contracted for, charged, or received by the holder thereof to exceed the maximum amount of interest permissible under applicable law, the excessive interest shall be applied to the reduction of the unpaid principal balance hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid principal balance hereof such excess shall be refunded to either Transferee or Transferor (whichever entity made such excess payment), and the provisions of this Note and any demand on Transferee or Transferor shall immediately be deemed reformed and the amounts thereafter collectible hereunder shall be reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder. All interest paid or agreed to be paid to the holder hereof shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full term of such indebtedness until payment in full (including the period of any renewal or extension hereof) so that the rate or amount of interest on account of such indebtedness does not exceed the Maximum Rate.

Transferee further agrees to make each payment when due, notwithstanding the fact that a portion of the principal indebtedness may now or hereafter be prepaid. Transferee further agrees that the Note, Deed of Trust, and Loan Documents shall remain in full force and effect, except as modified herein, and Transferee agrees to abide by all the provisions of the Note, Deed of Trust and Loan Documents. Transferee agrees to perform all of the obligations and covenants of the Borrower (as defined in the Loan Documents). In the event of any default by Transferee under the terms of the Note, Deed of Trust or Loan

Documents, the Lender may exercise all remedies available to it under the terms of the Note, Deed of Trust or Loan Documents or otherwise available to it at law or in equity.

2.     Lender hereby accepts Transferee as its obligor and agrees to amend its records to show Transferee as its obligor, and agrees henceforth, in all respects to treat Transferee as its borrower although Transferor is not relieved of its obligations under the Loan Documents.

3.     NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO RELEASE TRANSFEROR FROM ANY OF TRANSFEROR'S OBLIGATIONS OR LIABILITIES UNDER THE NOTE, THE DEED OF TRUST OR THE LOAN DOCUMENTS, OR TO RELEASE ORIGINAL GUARANTORS FROM THEIR OBLIGATIONS. TRANSFEROR AND ORIGINAL GUARANTORS HEREBY SPECIFICALLY ACKNOWLEDGE AND ACCEPT SUCH ORIGINAL OBLIGATIONS AND LIABILITIES, SUBJECT TO ANY MODIFICATIONS SET OUT HEREIN.

4.     It is expressly provided that nothing herein shall operate to impair the validity, priority and enforceability of Lender's lien on the Property or any other collateral securing the Indebtedness. Transferor specifically acknowledges that the collateral described in the Deed of Trust which was owned by Transferor remains as collateral to secure the continuing obligations as the original maker of the Note to Lender.

5.     Transferee acknowledges that part of the purchase price of the property above-described is the assumption by the Transferee of the Indebtedness, and that the vendor's lien retained in the Warranty Deed (Assumption) of the property from Transferor to Transferee of even date herewith is additional collateral in favor of Lender to secure the Note and Indebtedness.

6.     Transferee shall pay all interest current as of the date of execution of this Agreement, at the interest rate then in effect pursuant to the Loan Documents.

7.     Transferee shall pay all actual costs and expenses of Lender in connection with the underwriting, negotiation, documentation and closing of this Agreement, including without limitation, all costs of appraisal, legal fees and expenses, title, environmental and third party consultants and other experts upon the earlier of the payoff date or the Maturity Date..

8.     TRANSFEROR, TRANSFEREE AND ORIGINAL GUARANTORS HEREBY WAIVE ANY AND ALL RIGHTS UNDER TEXAS PROPERTY CODE 51.003-51.005 (AS MAY BE AMENDED).

9.     Transferor, Transferee and Original Guarantors hereby represent and warrant to Lender that Transferor, Transferee and Original Guarantors do not have any claims or offsets against, or defenses or counterclaims to, the terms and provisions of the Note, Deed of Trust, the Guaranty Agreements, and all related Loan Documents or any other matter set forth herein, whether known or unknown, asserted or unasserted, and on or before the date of this Agreement. Nevertheless, to the extent any determination or assertion is hereafter

made that Transferor, Transferee and/or Original Guarantors had any such claims, offsets, defenses or counterclaims, Transferor, Transferee and Original Guarantors hereby waive and hereby release Lender, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of Lender, and the officers, directors, shareholders, partners, employees, attorneys and agents of each of the foregoing (collectively, the "Released Parties") from, any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after having the opportunity to consult counsel with respect thereto. Transferor, Transferee and/or Original Guarantors agree not to sue any Released Parties on the basis of any released claim.

10. The parties hereto hereby extend said liens on said property until the Note and Indebtedness as so renewed and extended has been fully paid, and agree that such extension or rearrangement shall in no manner affect or impair the Note or the liens securing the same and that said liens shall not in any manner be waived, and the parties further agree that all terms and provisions of the Note, including any modifications thereto, and of the instrument or instruments creating or fixing the liens securing the same shall be and remain in full force and effect as therein written, except as may be otherwise expressly provided herein.

11. Transferor, Transferee and Original Guarantors acknowledge and agree that as of March 18, 2010, the outstanding principal balance on the Note was $408,000.00.

12. Except as expressly and specifically modified and/or superseded by this Agreement, the terms and provisions of the Loan Documents, and the liens which they establish, are ratified and confirmed and shall continue in full force and effect in their entirety. Transferor, Transferee, Original Guarantors and Lender agree that the Loan Documents shall continue to be legal, valid, binding and enforceable in accordance with their respective terms.

13. Transferor, Transferee and Original Guarantors hereby expressly acknowledge and agree that (i) no failure or delay by Lender in exercising any right, power or remedy under this Agreement or under any of the Loan Documents shall operate as a waiver thereof, (ii) no failure or delay by Lender to insist upon the strict performance by Transferor, Transferee and/or Original Guarantors of any term, condition, covenant or agreement or to exercise any right, power or remedy as a result of the breach thereof shall constitute a waiver of any such term, condition, covenant or agreement or of any breach thereof or preclude Lender from insisting on the strict performance thereof, (iii) no single or partial exercise of any right, power or remedy of Lender shall preclude further exercise of any right, power or remedy, and (iv) the acceptance by Lender of a partial payment of any amount due under the terms hereof shall not preclude Lender from requiring the full and timely payment of any and all amounts due under the terms hereof or any of the Loan Documents.

14. The parties hereto acknowledge that they have been advised of the facts bearing on the matters set forth in this Agreement and that each of them have been advised of their legal rights by an attorney of their choice and selection. Each party acknowledges that his, her, or its duly authorized officer has read this Agreement in its entirety and fully

understands its content and effect. Each party hereto acknowledges that this Agreement is being made as a free choice of each of the parties.

15. The relationship among Lender, Transferor, Transferee and the Original Guarantors is solely that of debtor and creditor. Lender has no fiduciary or other special relationship with the Transferor, Transferee and the Original Guarantors and is not a partner or joint venturer with Transferor, Transferee and the Original Guarantors, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Transferor, Transferee, the Original Guarantors and Lender to be other than that of debtor and creditor.

16. The provisions of this Agreement may be amended or waived only by an instrument in writing, signed by the parties hereto.

17. Lender, Transferor, Transferee and Original Guarantors each acknowledge that Lender has no obligation to reinstate the Loan Documents and Lender also will have no obligation to deal with Transferor, Transferee and Original Guarantors. Transferor, Transferee and Original Guarantors acknowledge that Transferor, Transferee and Original Guarantors are not relying on any agreement, representation or warranty of Lender or any representative of Lender in entering into this Agreement, other than the agreements of Lender expressly and specifically set forth in this Agreement. THIS AGREEMENT AND ALL OTHER DOCUMENTS RELATING TO THE LOAN AND TO THIS AGREEMENT CONSTITUTE A WRITTEN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS AGREEMENT OR ANY OF THE LOAN DOCUMENTS.

18. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance.

19. This Agreement may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same agreement. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.

20. This Agreement shall be binding upon and shall inure to the benefit of the above parties, their successors and assigns.

Executed as of June _30_ 2010.

- SIGNATURE PAGE FOLLOWS -

**TRANSFEREE:**

FSI-TEXVAL, LLC
a Texas limited liability company

By: _____
Amer J. Hammoud
President


**GUARANTOR:**

_____
AMER J. HAMMOUD


**TRANSFEROR:**

TEX-VAL, L.P.
a Texas limited partnership

By: HAMMOUD, INC.
a Texas corporation
General Partner

By: _____
Amer J. Hammoud
President


**LENDER:**

WELLS FARGO BANK, N.A.,
successor-by-merger to
WACHOVIA BANK, NATIONAL
ASSOCIATION

By: _____
Jason Ford
Assistant Vice President

STATE OF TEXAS §
§
COUNTY OF WILLIAMSON §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared **Amer J. Hammoud, individually and as President of FSI-TEXVAL, LLC**, a Texas limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ___/___ day of ~~June~~ July, 2010.



CLAY BLANKENSHIP
Notary Public, State of Texas
My Commission Expires
January 7, 2014



NOTARY PUBLIC, State of Texas


STATE OF TEXAS §
§
COUNTY OF WILLIAMSON §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared **Amer J. Hammoud, President of HAMMOUD, INC.**, a Texas corporation, General Partner of **TEX-VAL, L.P.**, a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the ___/___ day of ~~June~~ July, 2010.



CLAY BLANKENSHIP
Notary Public, State of Texas
My Commission Expires
January 7, 2014

_____
NOTARY PUBLIC, State of Texas

STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared Jason Ford, Assistant Vice President of WELLS FARGO BANK, NATIONAL ASSOCIATION, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same on behalf of said banking institution for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _13th_ day of June, July 2010.



_____
NOTARY PUBLIC, State of Texas

AFTER RECORDING, RETURN TO:
Marsha L. Dekan, Esq.
SettlePou
3333 Lee Parkway, 8th Floor
Dallas, Texas 75219

---

All that certain tract or parcel of land situated in the Memucan Hunt Survey, A-314, in Williamson County, Texas and being a part of a 2.00 acre tract of land conveyed to Larry Lea et ux by deed recorded in Volume 923, Page 228 of the Deed Records of Williamson County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at an iron pin found in an angle point of the West line of a 1.513 acre tract of land described in Volume 873, Page 677 of the above mentioned Deed Records and the most Easterly Northeast corner of a 6.001 acre tract described in Volume 2001016282 of the Official Records of Williamson County, Texas for the Southeast corner of the above mentioned 2.00 acre tract and the Southeast corner of this tract.

THENCE S 75°51'51" W 216.10 feet to an iron pin found in an interior corner of the above mentioned 6.001 acre tract and the Southwest corner of the said 2.00 acre for the Southwest corner of this tract.

THENCE N 01°58'23" W with the West line of the said 2.00 acre tract 165.40 feet to an iron pin with aluminum cap found on the curving South line of Louis Henna Boulevard (State Highway #45) for the most Northerly Northeast corner of the said 6.001 acre tract for the Northwest corner of this tract.

THENCE with the South line of Louis Henna Boulevard with the arc of the said curve to the left 215.76 feet, said curve having a radius of 5788.00 feet, a central angle of 02°08'09", and a sub-chord which bears N 76°40'14" E 215.75 feet to an iron pin found on the West line of the above mentioned 1.513 acre tract and the East line of the said 2.00 acre tract for the Northeast corner of this tract.

THENCE S 01°52'30" E 162.35 feet to the POINT OF BEGINNING, containing 0.792 acres of land, more or less.

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS   2011006769

*Nancy E. Rister*

01/31/2011 09:19 AM

KFOSTER $52.00

NANCY E. RISTER, COUNTY CLERK

WILLIAMSON COUNTY, TEXAS

08-4047($408k)

EXHIBIT "A"
SOLO PAGE

) Settle Pou
2333 Lee Parkway 8th floor
Dallas, TX 75219